STEPHENS v DIXON

Docket No. 137734. Submitted November 18, 1992, at Detroit. Decided
    April 5, 1993, at 9:20 A.M. Leave to appeal sought.

Shirley Stephens brought an action on November 20, 1990, in the
    Wayne Circuit Court against C.J. Dixon, seeking damages for
    serious impairment of body function resulting from injuries
    suffered as the result of the negligent operation of an automo-
    bile owned by Dixon. The plaintiff appeared to have fully
    recovered from her injuries within a few weeks of the June
    1987 accident, but alleged that in February 1989 she began to
    have neck pain and that in December 1989 she was diagnosed
    as having spondylosis of the neck vertebrae, allegedly a latent
    result of the 1987 accident. The trial court, Sharon Tevis Finch,
    J., granted summary disposition for the defendant, holding that
    the three-year period of limitation began to run from the date
    of the accident and, thus, the action was barred. The plaintiff
    appealed.

The Court of Appeals *held:*

The period of limitation for a negligence action seeking
    damages for injuries suffered in an automobile accident and
    alleging a serious impairment of body function begins to run
    from the date of the accident unless the plaintiff can show that
    the injury was latent, that there was no reason to associate any
    medical conditions with the trauma caused by the automobile
    accident, and that even with the exercise of reasonable dili-
    gence the causal connection between the condition and the
    accident would have remained unknown. The discovery doc-
    trine is not available where the plaintiff merely misjudges the
    severity of a known injury or suffers consequent symptoms or
    ailments reasonably related to the originally known causally
    connected injury.

Because a latent injury was alleged in this case, the trial
    court erred in granting the defendant's motion for summary
    disposition without first considering the discovery doctrine. On
    remand, the plaintiff must be given the opportunity to persuade
    the trial court that she is eligible for application of the discov-
    ery doctrine.

Reversed and remanded.

MURPHY, J., concurring because the injury in this case is appropriate for utilization of the discovery rule, stated that the period of limitation for a cause of action pursuant to the exception of the no-fault act for a serious impairment of body function should not begin to run until the injured party knows, or in the exercise of reasonable diligence should have known, that the injury threshold has been breached, because all the elements of the cause of action cannot be alleged until the injury threshold has been met.

*Law Offices of Peter B. Bundarin* (by *Peter B. Bundarin*), for the plaintiff.

*Romain, Donofrio, Kuck & Egerer, P.C.* (by *Karen L. Hahn*), for the defendant.

Before: DOCTOROFF, C.J., and MURPHY and CAVANAGH, JJ.

CAVANAGH, J. Plaintiff appeals as of right from the trial court's order that granted defendant's motion for summary disposition based upon the three-year statute of limitations for negligence actions. MCL 600.5805(1) and (8); MSA 27A.5805(1)and (8). We reverse and remand for further proceedings.

On June 23, 1987, plaintiff was involved in an automobile accident. Although plaintiff was thrown about the passenger compartment and lost consciousness, she recovered within a period of weeks and believed that she had suffered no long-term injuries. In February of 1989, plaintiff started having neck pain, which increased in severity until she sought medical attention in December. The diagnosis was spondylosis of the neck vertebrae, an alleged latent result of the accident that had occurred in 1987.

On November 20, 1990, plaintiff filed her complaint, and on December 18, 1990, defendant moved for summary disposition. According to the

defendant, the lawsuit was time-barred because the three-year period of limitation had expired on June 23, 1990, five months before plaintiff had filed her suit. In response, plaintiff argued that the period of limitation was tolled until she discovered or should have discovered a serious impairment of body function, the threshold established by MCL 500.3135; MSA 24.13135 for tort liability caused by the ownership, maintenance, or use of a motor vehicle. The trial court ruled that these facts could not be used to extend the period of limitation; a ruling with which we must disagree.

In *Mielke v Waterman,* 145 Mich App 22; 377 NW2d 328 (1985), the plaintiff was injured in an automobile accident on August 19, 1977. In his lawsuit, filed on November 22, 1983, the plaintiff alleged that a serious impairment of body function, epilepsy caused by posttraumatic scarring of the brain, first manifested itself on May 3, 1982. Consequently, the plaintiff argued that his cause of action accrued on that date and was not time-barred. This Court agreed and went on to explain that the plaintiff's cause of action did not accrue "until he could allege all of the essential elements of the cause of action in a proper complaint." *Id.* at 26.

In *Horan v Brown,* 148 Mich App 464; 384 NW2d 805 (1986), the plaintiff suddenly and unexpectedly experienced facial paralysis that resulted from an automobile accident she had been involved in four years earlier. Relying on *Mielke,* this Court again held that the period of limitation was tolled by operation of the discovery rule. *Id.* at 468.

In a somewhat different factual setting, this Court repeated its agreement with the proposition that a cause of action under the no-fault act does not accrue until the person discovers or should

have discovered a serious impairment of body function. *Sherrell v Bugaski,* 169 Mich App 10, 16; 425 NW2d 707 (1988). In that case, however, we found that all the necessary elements were present when the plaintiff filed her first lawsuit in 1980 and that her cause of action accrued when she discovered the lower back injuries that formed the basis of her first action. Consequently, the plaintiff's second lawsuit, based on a subsequently discovered herniated disc and filed on May 8, 1986, was barred. With respect to damages that were discovered later, this Court explained that "they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred." *Id.*

In *Hohendorf v Meagher,* 188 Mich App 400; 470 NW2d 418 (1991), a case with almost the same facts as *Sherrell,* the plaintiffs' negligence action, based on soft-tissue back and neck injuries, was filed on April 18, 1984, and was dismissed, apparently because the court found that the injured plaintiff had not sustained a serious impairment of body function. The plaintiffs' second negligence action, based on a recently diagnosed herniated disc, was filed on July 18, 1989, and was also dismissed. On appeal, this Court concluded that the period of limitation for the plaintiffs' cause of action had not been tolled until discovery of the herniated disc. *Id.* at 403.

In arriving at its decision, the *Hohendorf* Court relied on *Gagliardi v Flack,* 180 Mich App 62; 446 NW2d 858 (1989), for the proposition that "in an automobile negligence case, the statute of limitations is not tolled until such time as the plaintiff discovered or should have discovered that his injury constituted a serious body function." *Hohendorf, supra* at 403.

In *Gagliardi,* the plaintiff injured his wrist in an

automobile accident that occurred on August 14, 1982. The plaintiff admitted in his deposition that, as a result of his wrist injury, he was totally disabled for six weeks immediately following the accident and partially disabled until wrist surgery was performed on May 7, 1985. *Gagliardi, supra* at 64. When the plaintiff filed his suit on October 24, 1985, he convinced the trial court that the period of limitation should be tolled until such time as he discovered or should have discovered that his wrist injury constituted a serious impairment of body function. However, the majority of the *Gagliardi* panel was not convinced, and expressed disagreement with the application of "the tolling doctrine to the entire spectrum of auto accident injuries," a suggestion that the majority attributed to *Mielke* and *Horan. Id.* at 76.

The apparent split of authority occasioned by *Gagliardi* and *Mielke* was certified to the Supreme Court, and leave to appeal was denied because the Supreme Court was "not persuaded that an actual conflict presently exist[ed] in the Court of Appeals." 433 Mich 923 (1989). The only distinguishing feature that we can find that would be consistent with the Supreme Court order and at the same time reconcile the two lines of authority appears to be a narrow exception that would toll the period of limitation with respect to latent diseases, an exception discussed in *Gagliardi* and recognized earlier by a New Jersey court. *Gagliardi, supra* at 72-73, citing *Mancuso v Mancuso,* 209 NJ Super 51; 506 A2d 1253 (1986).

In *Mancuso,* the plaintiff was involved in an automobile collision and "sustained what appeared to be superficial soft tissue injuries of minimal consequence." *Id.* at 53. Sometime later, the plaintiff began experiencing neurological symptoms, and her problem was diagnosed as Parkinson's

disease. In her attempt to avoid summary disposition, the plaintiff argued that the "potential causal connection between a severe exacerbation of Parkinson's disease and an apparently minor trauma sustained in an automobile accident that apparently resulted only in negligible soft tissue injury is a matter of such highly specialized medical knowledge that [she should not be] reasonably chargeable with not having made that connection." *Id.* at 58.

Persuaded by the plaintiff's argument, the *Mancuso* court decided that an extraordinary case for application of the discovery rule was shown when the "plaintiff had no reason, by way of medical advice or otherwise, to associate her . . . condition with the trauma and . . . could show that even with the exercise of reasonable diligence that causal connection would have remained unknown to her." *Id.* The New Jersey court went on to explain that the discovery doctrine would not "be available to a plaintiff who merely misjudges the severity of a known injury or who suffers consequent symptoms or ailments reasonably related to the originally known causally-connected injury." *Id.* at 59.

In acknowledging the distinction articulated in *Mancuso,* the *Gagliardi* Court rejected application of the discovery doctrine because "[u]nlike the latent disease cases (Parkinson's disease, epilepsy, facial paralysis), the instant case involves a known injury which was diagnosed approximately two weeks following the accident. . . . Unlike the cases relied upon by the plaintiff [*Mielke* and *Horan*], the wrist injury at issue was immediately known." *Gagliardi, supra* at 75.

In our attempt at reconciliation, we can only conclude that the discovery doctrine is available in cases such as *Mielke* and *Horan* where the plain-

tiff alleges a latent injury, and not available in cases such as *Gagliardi* and *Hohendorf* where the plaintiff misjudges the severity of a known injury or suffers consequent symptoms or ailments reasonably related to the originally known causally connected injury. To gain the protection of the discovery doctrine, we now hold that the plaintiffs must be able to show that there was no reason, by way of medical advice or otherwise, to associate their conditions with the trauma caused by the automobile accident and that even with the exercise of reasonable diligence the causal connection would have remained unknown.

Because we are presented in this case with allegations of a latent injury, we believe that the trial court erred in granting defendant's motion for summary disposition without first considering the discovery doctrine. On remand, plaintiff will be given the opportunity to persuade the trial court that hers is an extraordinary case eligible for the application of the discovery rule.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

DOCTOROFF, C.J., concurred.

MURPHY, J. *(concurring)*. I concur in the result reached by Judge CAVANAGH, because of this Court's decision in *Hohendorf v Meagher,* 188 Mich App 400; 470 NW2d 418 (1991), which adopted the majority opinion in *Gagliardi v Flack,* 180 Mich App 62; 446 NW2d 858 (1989). Administrative Order No. 1990-6, 436 Mich lxxxiv, requires me to follow *Hohendorf.* If not so restrained, I would reaffirm and adopt my dissent in *Gagliardi,* which basically held that the period of limitation does not start to run until the injured party

knows, or in the exercise of reasonable diligence should have known, that the injury threshold has been reached under the no-fault statute. In my view, all the elements of a cause of action under the no-fault statute have not occurred and cannot be alleged in a proper complaint until the injury threshold has been met. See *Filcek v Utica Building Co,* 131 Mich App 396, 399; 345 NW2d 707 (1984); *McCann v Brody-Built Construction Co, Inc,* 197 Mich App 512; 496 NW2d 349 (1992). Nor would I distinguish between a latent injury and the misjudging of the severity of a known injury or consequent symptoms or ailments, as Judge CAVANAGH has accomplished so artfully in an effort to reconcile *Mielke* and *Horan*[1] with *Gagliardi* and *Hohendorf.* Nevertheless, I concur because I find the injury in this case to be an appropriate one for utilization of the discovery rule.

---

[1] *Mielke v Waterman,* 145 Mich App 22; 377 NW2d 328 (1985), and *Horan v Brown,* 148 Mich App 464; 384 NW2d 805 (1986).