RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LAMONT BERNARD HEARD,

                *Plaintiff-Appellant*,

    *v.*

YARNICE STRANGE; JEFFREY OOSTERHOF; ADAM DOUGLAS; CHRISTIAN ALCORN,

                *Defendants-Appellees*.

No. 23-1624

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-10237—Nancy G. Edmunds, District Judge.

Argued: January 23, 2025

Decided and Filed: January 29, 2025

Before: GILMAN, McKEAGUE, and THAPAR, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James Y. Xi, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Appellant. Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** James Y. Xi, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Appellant. Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

_____

## OPINION

_____

THAPAR, Circuit Judge. Prisoners often have complaints about prison life. When these complaints arise, prisoners can't go straight to federal court. The Prison Litigation Reform Act

("PLRA") requires prisoners to seek relief from state prison officials before filing a federal lawsuit. This is called an "exhaustion" requirement since prisoners must exhaust their administrative remedies before suing.

Michigan's "tolling provision" doesn't affect that requirement. Instead, it merely pauses Michigan's statute of limitations while a claim is pending in court. That way, if an otherwise timely claim is later dismissed for procedural reasons (like a failure to exhaust administrative remedies), the plaintiff has an opportunity to re-file the claim. So how could Michigan's tolling rule be inconsistent with the PLRA's exhaustion requirement? The district court said that it was, reasoning that Michigan's tolling rule conflicted with unexpressed purposes that Congress might have harbored when enacting the PLRA. But as federal judges, we can't speculate about the hypothetical purposes of a law. We have to follow the text that Congress enacted. Because the plain text of the PLRA casts no doubt on state tolling provisions, we reverse the judgment below.

I.

Lamont Heard is a Michigan prisoner serving a life sentence. Heard claims that various prison officials retaliated against him for his litigation activities by transferring him to a different housing unit, called the Burns unit. Thus, he wants to sue the prison officials under 42 U.S.C. § 1983 for allegedly violating his First Amendment rights.

This case hinges on the procedural timeline. Heard says that he was wrongfully transferred to the Burns unit on January 10, 2017. And one day after the transfer occurred, he filed a grievance. He claims that this grievance was returned months later with instructions to file it with the local grievance coordinator, that he did so, and that the coordinator never responded.

Heard then sued on December 4, 2017, but that suit complained of a different prison transfer, not the transfer to the Burns unit. On March 2, 2018, Heard moved to amend his complaint to add the Burns claim. The district court dismissed the Burns claim on July 31, 2019, for Heard's failure to exhaust—since Heard didn't appeal this grievance and thus didn't fully exhaust the Burns claim.

In the wake of this dismissal, Heard exhausted the Burns claim with the prison. Back in federal court again, Heard sued on January 19, 2021, bringing his now-exhausted claim alleging that his transfer to the Burns housing unit violated his First Amendment rights.

All in all, Heard filed his lawsuit four years and nine days after his cause of action accrued on January 10, 2017—the date of his allegedly wrongful transfer. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020). Michigan's statute of limitations for personal injury actions—which is three years long—applies to Heard's First Amendment claim. Mich. Comp. Laws § 600.5805(2); *Garza*, 972 F.3d at 867 n.8. So when using straight math, Heard's suit is untimely. However, Michigan has another law—called a "tolling provision"—that pauses the statute of limitations while a claim is pending in court. Mich. Comp. Laws § 600.5856. Under that provision, the statute of limitations would be tolled from March 2, 2018 (when Heard added the Burns claim) to July 31, 2019 (when the district court dismissed that claim). *Sherrell v. Bugaski*, 425 N.W.2d 707, 710 (Mich. Ct. App. 1988). That statute would put over 16 months back on Heard's clock, making his First Amendment suit timely.

The parties dispute whether Heard can benefit from Michigan's tolling provision here. The State argues that he can't, since (in the State's view) Michigan's tolling provision is "inconsistent with" the Prison Litigation Reform Act of 1995. Pub. L. No. 104-134, § 101, 110 Stat. 1321, 1321–66 (1996). That is the sole question we must answer here.[1]

## II.

To answer that question, we turn to the history of federal courts "borrowing" state statutes of limitations.

## A.

Congress gave individuals a cause of action to sue state officials for violations of their constitutional rights. 42 U.S.C. § 1983. But § 1983 doesn't include a statute of limitations. So Congress instructed us in § 1988 to borrow from the "common law, as modified and changed by

---

[1]We appointed Mr. James Xi as counsel for Heard and thank him for his excellent advocacy on behalf of his client.

the constitution and statutes of the State," as long as the state's law "is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). Thus, we use state statutes of limitations for § 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985).

And, when we borrow a state's statute of limitations, we also borrow any relevant tolling provisions. After all, the two go hand-in-hand. "In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 464 (1975). So, we shouldn't "unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." *Hardin v. Straub*, 490 U.S. 536, 539 (1989).

Section 1988 didn't change how federal courts determined a lawsuit's timeliness; rather, it codified a longstanding practice. Federal courts had borrowed state statutes of limitations for decades beforehand. As early as 1830, the Supreme Court "held that state statutes of limitations govern[ed] . . . unless Congress ha[d] specifically provided otherwise." *Int'l Union UAW, AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04 (1966). Federal courts continued to borrow state statutes of limitations for § 1983 suits—this time, at the command of Congress. *See O'Sullivan v. Felix*, 233 U.S. 318, 321–22 (1914). This "tradition" of borrowing analogous state statutes of limitations was "based on a congressional decision to defer to the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the [analogous] state cause of action." *Hardin*, 490 U.S. at 538 (citation omitted). Indeed, states can reach opposite conclusions about the availability of tolling without running afoul of federal law—even going so far as to toll the limitations period for the duration of a prisoner's confinement. *Id.* at 544.

If that were the end of the story, this case would be open and shut. We apply state tolling rules unless they're inconsistent with federal law. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484–85 (1980); 42 U.S.C. § 1988(a). Michigan's tolling rule isn't inconsistent with § 1983. *See Hardin*, 490 U.S. at 543–44 (concluding that another longstanding Michigan tolling provision was consistent with § 1983). Therefore, § 600.5856 applies and renders Heard's action timely because § 600.5856 tolls the statute of limitations during a prior suit when that prior suit wasn't adjudicated on the merits. *Sherrell*, 425 N.W.2d at 710.

But Congress passed a new law in 1996:  the Prison Litigation Reform Act.  Among other things, the PLRA requires prisoners like Heard to exhaust their administrative remedies in prison before suing in federal court.  42 U.S.C. § 1997e(a).  And the State contends that Michigan's tolling provision weakens the PLRA's exhaustion requirement and thwarts the PLRA's goal of reducing burdensome prisoner litigation.  Michigan's logic goes like this.  Section 600.5856 can be abused:  A prisoner can bring his unexhausted claims to court, have his claims dismissed for failure to exhaust, and then come back to court with his (now-exhausted) claims.  Those claims won't be time-barred under Michigan law because the statute of limitations would've been tolled in the meantime.  So, the prisoner wouldn't be penalized for first suing without exhausting.  And without that deterrent, the prisoner won't bother exhausting in the first place.

## B.

So, is Michigan's tolling rule inconsistent with the PLRA?  The answer is no.  Start with the text:  The PLRA says nothing about tolling.  It simply says, "No action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  *Id.* Michigan's tolling provision doesn't affect that requirement.  So nothing in the text of the PLRA's exhaustion requirement casts any doubt on state law tolling rules.

And, as discussed above, using state law tolling rules is consistent with history and tradition.  Federal courts have borrowed state timing rules since at least 1830.  *McCluny v. Silliman*, 28 U.S. (3 Pet.) 270, 276–77 (1830) (borrowing Ohio statute of limitations for lawsuit against federal officer).  Thus, Congress enacted the PLRA against a well-established backdrop of federal courts borrowing tolling rules for § 1983 suits.  *Wilson*, 471 U.S. at 266–67; *Tomanio*, 446 U.S. at 483–84.  In fact, Congress does this all the time.  *See Bond v. United States*, 572 U.S. 844, 857 (2014) ("Congress legislates against the backdrop of certain unexpressed presumptions.") (quotation marks omitted).  Given the federal courts' long tradition of borrowing state statutes of limitations and tolling periods for § 1983 suits, we can presume that Congress didn't disturb that practice when it passed the PLRA.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 n.12 (1983).

The State calls this precedent "inapposite" because the PLRA added new procedural hurdles for prisoner § 1983 suits. But an unbroken strand of Supreme Court precedent commands federal courts to generally apply state statutes of limitations and tolling rules to § 1983 suits. If Congress thought that state tolling rules endangered the exhaustion requirement, it could've displaced them. Congress knows how to enact a statute of limitations. *See, e.g.*, 42 U.S.C. § 1986 (setting one-year statute of limitations for certain offenses). Thus, the PLRA changes nothing about the applicability of Michigan's tolling rule under § 600.5856.

Indeed, courts in our circuit have repeatedly applied Michigan's tolling rule to prisoner § 1983 suits without indicating that these tolling rules might undermine the PLRA.[2] At least one other circuit has done the same for an analogous state tolling provision. *See Gonzalez v. Seal*, 677 F. App'x 918, 921–22 (5th Cir. 2017) (per curiam) (tolling under a similar Louisiana law for a prisoner's earlier unexhausted suit). To be sure, these courts didn't outright hold that § 600.5856 was *consistent* with the PLRA. Only a handful of courts have expressly confronted similar arguments. *See Allaway v. McGinnis*, 362 F. Supp. 2d 390, 395–96 (W.D.N.Y. 2005) (finding New York's analogous tolling statute consistent with the PLRA); *Gashi v. County of Westchester*, No. 02 Civ. 6934 (GBD), 2005 WL 195517, at *11 (S.D.N.Y. Jan. 27, 2005) (same). But that's unsurprising, since the PLRA is silent about tolling.

Moreover, since federal courts routinely create their own equitable tolling rules for prisoner suits subject to the PLRA, it'd be odd to find Michigan's tolling rule inconsistent with the PLRA. For instance, the Sixth Circuit tolls while state prisoners exhaust their administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Other circuits do the same. *Battle v. Ledford*, 912 F.3d 708, 718–19 (4th Cir. 2019); *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011); *Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005). The Fifth Circuit even authorized tolling during a prisoner's first lawsuit on top of tolling while the prisoner

---

[2]*See McDaniel v. Bechard*, No. 18-CV-12843, 2019 WL 1372170, at *3–4 (E.D. Mich. Feb. 20, 2019), *report and recommendation adopted*, No. 18-12843, 2019 WL 1354162 (E.D. Mich. Mar. 26, 2019); *Thaddeus-X v. Love*, 215 F.3d 1327 (6th Cir. 2000) (table); *Bell v. Washington*, No. 21-10399, 2022 WL 830589, at *3 (E.D. Mich. Mar. 17, 2022); *White v. Jindal*, No. 13-15073, 2014 WL 2864191, at *13 (E.D. Mich. June 24, 2014); *Davis v. Cox*, No. 2:18-CV-11255, 2019 WL 1783066, at *6 n.9 (E.D. Mich. Mar. 29, 2019), *report and recommendation adopted*, No. 18-11255, 2019 WL 1778840 (E.D. Mich. Apr. 23, 2019) (assuming that § 600.5856 applied); *see also Johnson v. Miller*, No. 1:20-CV-791, 2020 WL 5677395, at *6 (W.D. Mich. Sept. 24, 2020) (declining to apply § 600.5856 because the prisoner hadn't met its requirements, not because it was inconsistent with the PLRA).

exhausted—a rule that resembles Michigan's. *Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002).

This precedent reiterates that the PLRA didn't establish any rule on tolling. Instead, when the relevant state didn't provide for tolling, federal courts crafted their own rules to avoid penalizing prisoners for exhausting. And any differences between Michigan's tolling rule and federal equitable tolling rules don't make Michigan's rule inconsistent with a congressional statute. "Although a state's tolling provisions cannot be inconsistent with the policies underlying [federal law], there is no authority for the proposition that it must be consistent with the federal tolling provisions." *Kach v. Hose*, 589 F.3d 626, 643 n.19 (3d Cir. 2009) (quotation marks omitted). Finally, since the daylight between Michigan's tolling rule and our own is small, there's less likely to be any inconsistency between Michigan's rule and the PLRA. The Sixth Circuit already tolls for the time a prisoner spends exhausting his claim. *Brown*, 209 F.3d at 596. Michigan tolls for the time a prisoner spends trying to litigate his unexhausted claims. This difference in degree doesn't justify finding inconsistency with federal law.

## III.

"This case begins, and pretty much ends, with the text." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020). But the State tries to escape this conclusion by arguing that Michigan's tolling statute removes the "bite" from the PLRA's exhaustion requirement and is thus "diametrically opposed to Congress' purpose" in enacting the PLRA. Appellee Br. at 13, 4. And Michigan stresses that the exhaustion requirement has been a "critical component of the PLRA's success." *Id.* at 25. Under Michigan's tolling rule, the only consequence for filing an unexhausted suit is dismissal without prejudice. Michigan warns that allowing § 600.5856 to apply will usher in another era of overburdened federal courts and state prison officials.

### A.

To begin, Michigan's argument assumes that we should look at the policies underlying the PLRA to assess the alleged inconsistency of Michigan's tolling rule. That's not our job. First, § 1988 tells us to disregard state law if the state law is inconsistent with the Constitution or federal law, not the *policies* underlying those laws. 42 U.S.C. § 1988. Second, "[t]he best

evidence of [] purpose is the statutory text adopted by both Houses of Congress and submitted to the President," not our speculations. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991). Third, the Supreme Court has examined only the consistency of a state tolling rule with the federal policy underlying the *cause of action* at issue. *Johnson*, 421 U.S. at 465. The Court hasn't extended this policy-assessment test to procedural hurdles like the PLRA.**[3]**

What's more, the Supreme Court has rejected analogous policy concerns. In *Jones v. Bock*, lower courts had adopted several procedural rules to prevent the exhaustion requirement from becoming a "useless appendage." 549 U.S. at 217 (citation omitted). These procedural rules weren't in the PLRA. Still, the respondents argued that they were necessary; otherwise, "inmates will have little incentive to ensure that they have exhausted all available administrative remedies before proceeding to court." *Id.* at 223. But the Court rejected these procedural add-ons. "[P]erceived policy concerns" about the teeth of the exhaustion requirement didn't justify departing from the "usual practice under the Federal Rules." *Id.* at 212; *cf. Ross v. Blake*, 578 U.S. 632, 635 (2016) (rejecting other extratextual additions to the PLRA as a "freewheeling approach").

Here, the usual practice is to borrow state tolling rules because the PLRA says nothing about tolling. Michigan advances the same concerns about circumventing the exhaustion requirement as the prison officials did in *Jones*. But these concerns don't authorize departing from our usual practice and deciding that Michigan's tolling rule contradicts the PLRA.

B.

Even if we looked to the purposes of the PLRA, Michigan's tolling rule doesn't conflict. First off, prisoners didn't have to exhaust administrative remedies until 1980. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Then Congress gave district courts discretion to stay § 1983 suits while the prisoners exhausted their claims. *See* Civil Rights of Institutionalized Persons Act, Pub. L. No. 96-247, § 7, 94 Stat. 349, 352 (1980); *Woodford*, 548 U.S. at 84. Next, the PLRA made exhaustion mandatory. *See* 42 U.S.C. § 1997e(a).

---

**[3]**The PLRA doesn't give prisoners a cause of action. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Thus, the § 1983 policy-assessment test doesn't apply here.

Why did Congress make exhaustion mandatory?  As the Supreme Court has explained, "[b]eyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Exhaustion lets the prison address complaints first, reduces litigation by resolving some complaints in-house, and improves litigation by developing an administrative record.  *Jones*, 549 U.S. at 219.  Indeed, the "centerpiece" of the PLRA is the exhaustion requirement.  *Woodford*, 548 U.S. at 84.

Michigan's tolling provision is consistent with these policies.  Tolling the statute of limitations doesn't eliminate the exhaustion requirement.  Heard still had to, and did, exhaust his claims.  So the prison got the chance to address his complaints in the first instance and develop a record for Heard's later federal lawsuit.  That doesn't defeat the purposes of mandatory exhaustion.  *See Jones*, 549 U.S. at 219.  So we see no reason to "overread the PLRA's silence on tolling, misread the PLRA's purpose, and ignore the text of . . . § 1988." *Battle*, 912 F.3d at 717.

There's nothing in the PLRA that calls for second-guessing a state's "value judgment" about whether a claim is late or timely.  *Johnson*, 421 U.S. at 463–64.  Here, Michigan recognized an exception to the statute of limitations for "prior lawsuits between the parties which have not adjudicated the merits of the action." *Buscaino v. Rhodes*, 189 N.W.2d 202, 205 (Mich. 1971).  A version of this rule has been on Michigan's books since 1838. *Spier v. McQueen*, 1 Mich. 252, 252–53 (Mich. 1849).  What's more, the PLRA doesn't require a short statute of limitations—or even one at all.  So Michigan could abolish its statute of limitations if it desired.  If the abolition of a statute of limitations doesn't conflict with the PLRA, Michigan's more modest decision to toll for the duration of a lawsuit doesn't either.  How long is too long to allow prisoners to bring § 1983 claims?  States get to say, not us.

C.

The State's final argument is that we should follow the only other district court to find § 600.5856 inconsistent with the PLRA: *Crump v. Darling*.  No. 1:06-CV-20, 2007 WL 851750 (W.D. Mich. Mar. 21, 2007).  The court below relied on *Crump*.  And *Crump*, in turn, cited no caselaw to support its conclusion that § 600.5856 tolling contradicted the PLRA.  Even so,

*Crump* reasoned that tolling would "effectively encourag[e] the very litigation abuses the PLRA was enacted to curb," since prisoners could deliberately flout the exhaustion requirement, file unexhausted claims, and then refile those claims without falling outside the statute of limitations. *Id.* at \*14. At bottom, this amounts to an argument that a state tolling rule goes against the PLRA because it benefits prisoners to the detriment of prison officials. But § 1988 "does not say that state law is to be accepted or rejected based solely on which side is advantaged." *Robertson v. Wegmann*, 436 U.S. 584, 593 (1978). Rather, it "clearly instructs us to refer to state statutes." *Id.*

And *Crump* relied on questionable premises. Why would a prisoner want to delay a decision on the merits of his claim? A dismissal without prejudice doesn't address the prisoner's grievance or give the prisoner any form of relief. And that's what prisoners want: for their grievances to be addressed. There's no upside to tolling; it just limits the downside for failing to exhaust.

Plus, to the extent that a prisoner's goal is to harass prison officials, district courts have other tools to deal with these abusive prisoner suits. District courts must screen all civil suits brought by prisoners. 28 U.S.C. § 1915A. They're authorized to dismiss frivolous suits sua sponte, even when the claims haven't been exhausted. 42 U.S.C. § 1997e(c)(1–2). And the PLRA's "three-strikes" provision prohibits lawsuits by indigent prisoners who've already had three or more suits dismissed for being frivolous, malicious, or failing to state a claim. 28 U.S.C. § 1915(g). Finally, the Michigan Legislature can amend its tolling rule if prisoner suits prove too burdensome.

\*          \*          \*

Section 600.5856 doesn't excuse prisoners from exhausting their claims. We should be careful about finding "inconsistency" with federal law when a state rule is in apparent tension with one of the *purposes* of that law. And we should be doubly careful when that determination calls for speculation that prisoners will use § 600.5856 to evade the exhaustion requirement. Michigan hasn't shown us that this abuse is likely to occur. In fact, to its credit, Michigan candidly admitted that this abuse rarely happens.

"We are not insensitive to the challenges faced by the lower federal courts in managing their dockets and attempting to separate, when it comes to prisoner suits, not so much wheat from chaff as needles from haystacks." *Jones*, 549 U.S. at 224. But policy concerns about the strength of the PLRA's exhaustion requirement don't justify displacing Michigan's valid tolling rule and departing from the federal courts' usual practice of borrowing state tolling rules. Finding an inconsistency here "cannot fairly be viewed as an interpretation of the PLRA." *Id.* at 216. We reverse.